UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 03-CR-10356-MLW |
| ) | |
| FREDERICK A. SIMONE, (1) ) | |
|   a/k/a FREDDY, THE NEIGHBOR; ) | |
| VINCENT C. GIOACCHINI, (2) ) | |
|   a/k/a DEE DEE; and ) | |
| FRANCIS WHITE, (3) ) | |
|   a/k/a THE WHITE-HAIRED GUY ) | |

### GOVERNMENT'S CONSOLIDATED[1] OPPOSITION TO THE CLAIMS OF APPEAL AND REVIEW OF DETENTION ORDER FILED BY CO-DEFENDANTS FREDERICK A. SIMONE AND VINCENT C. GIOACCHINI

The United States of America, by and through its attorney, the United States Attorney for the District of Massachusetts, hereby files respectfully its Consolidated Opposition to the January 21, 2004 Claim of Appeal and Review ("Claim") filed by Defendant Frederick A. Simone ("Simone") and the January 23, 2004 Claim of Appeal and Review ("Claim") filed by Defendant Vincent C. Gioacchini ("Gioacchini"), both of which seek review and revocation or amendment of the January 16, 2004 Order on Detention ("Order") of Magistrate Judge Alexander. For the reasons which follow, this Court should deny these Claims and adopt and affirm Magistrate Judge Alexander's Order.

---

[1] The government consolidates its Opposition because of the interrelatedness of the applicable arguments and evidence, while recognizing "[a]s the Court of Appeals has reminded us, [that] detention determinations must be made individually and be based on the evidence regarding a particular defendant." United States v. Patriarca, 776 F. Supp. 593, 597 (D. Mass. 1991).

I.  **BACKGROUND**

On November 20, 2003, Simone, Gioacchini and co-defendant Francis White ("White") were charged in a thirty-nine count sealed Indictment which alleged, among other charges, violations of 18 U.S.C. §§1962 (Racketeer Influenced and Corrupt Organizations), 1952 (Interstate Travel in Aid of Racketeering) 1951 (Hobbs Act Extortion), 892 and 894 (Extortionate Extensions of Credit), 1956 (Money-Laundering Conspiracy) and 371 (Conspiracy). That Indictment alleges in effect that Simone and Gioacchini, long-time Mafia soldiers, participated with White in a RICO enterprise of La Cosa Nostra ("LCN") that involved among other activities gambling, loansharking and extortion. Compare United States v. DiGiacomo, 746 F. Supp. 1176,1185 (D. Mass. 1990) ("[T]he essence of the RICO charge is that [defendant] is an official of the Mafia, an enterprise which engages in violence, intimidation of witnesses, and murder in the regular course of its illegal business.").

Simone and Gioacchini were arrested and initially appeared before Magistrate Judge Alexander on December 1, 2003 when the Indictment was also unsealed. The government moved for detention of Simone and Gioacchini[2] under: (1) 18 U.S.C. §3142(f)(1)(A) because Simone and Gioacchini were charged with various crimes of

---

[2]The government also moved unsuccessfully to detain White whom Magistrate Judge Alexander released on December 24, 2003.

-2-

violence, including without limitation extortion, in violation of 18 U.S.C. §1951(a);[3] (2) 18 U.S.C. §3142(f)(2)(A) because Simone and Gioacchini presented serious risks of flight, given the potential sentencing exposure following conviction, despite their ties to Massachusetts; and (3) 18 U.S.C. §3142(f)(2)(B) because Simone and Gioacchini presented serious risks of attempting or actually obstructing justice or of attempting or actually threatening, injuring or intimidating a prospective witness or juror, given their criminal histories and LCN membership. Consequently, the government requested a three-day continuance pursuant to 18 U.S.C. §3142(f) and an arraignment and detention hearing were scheduled for December 4, 2003. On Simone's motion, his arraignment and detention hearing were continued until December 17, 2003. On Gioacchini's motion, his arraignment and detention hearing were continued to December 9, 2003.[4]

The government presented a single witness, Massachusetts State Police ("MSP") Detective Lieutenant John Tutungian, through whom an Affidavit in Support of Pretrial Detention was offered and admitted. (See Docket Entry 14.) Neither Simone nor Gioacchini called any witnesses.

---

[3] For Simone, the multiple charges of extortion, in violation of 18 U.S.C. §§892 and 894, plainly constitute crimes of violence.

[4] The government has obtained compact disc recordings of the detention hearings and is ordering transcripts. When obtained, the government will provide copies to the Court.

On January 16, 2004, Magistrate Judge Alexander found by a preponderance of the evidence that Simone and Gioacchini each poses a serious risk of flight and by clear and convincing evidence that there are no conditions of release which could assure the safety of the community if Simone or Gioacchini were released. (See Jan. 16, 2004 Ord. at 8.)[5]

On January 21, 2004, Simone filed his Claim, followed by an identical Claim by Gioacchini on January 23, 2004, both of which this Court should deny because the evidence amply supports Magistrate Judge Alexander's Order and findings. Moreover, the record amply establishes that neither Simone nor Gioacchini will obey any Court-imposed conditions of release because they will, as they have in the past, place their allegiance to the LCN and to each other as LCN Soldiers above their obligations under the law, including orders by this Court.

## II. DISCUSSION

"When a district judge reviews the findings of a magistrate judge with respect to pretrial detention, it must engage in de novo review of the contested order." United States v. Marquez, 113 F.Supp. 2d 125, 127 (D. Mass. 2000) (citation omitted). "In doing so, the Court may reject the magistrate judge's fact

---

[5] The Court made no finding and did not otherwise rule on the government's motion for detention under 18 U.S.C. §3142(f)(2)(B).

finding and start the hearing process anew or may accept that fact finding and hear additional facts and argument." Id. See also United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990) ("We believe that the proper approach is for the district court to engage in de novo review of the contested order.") (citations omitted). Where the defendant-appellant does not "present a different view of the facts", "those facts presented by the Magistrate Judge [may be] adopted by this [District] Court." Id. at 126. Compare also DiGiacomo, 746 F. Supp. at 1181 ("An independent review and analysis of all of the evidence is particularly appropriate here because this court has received considerably more information than was presented to the magistrate.").[6]

To determine whether "suitable" pretrial release conditions exist, the court must examine:

> (1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release.

Tortora, 922 F.2d at 884 (citing 18 U.S.C. §3142(g)). (See also Jan. 16, 2004 Ord. at 5-8 (citing same foci).) "[I]n this context," "[d]anger" "was not meant to refer only to the risk of

---

[6] The converse applies equally here. Neither Simone nor Gioacchini has submitted any substantive pleadings or evidence in support of their Claims. Instead, Magistrate Judge Alexander has already reviewed everything now before this Court.

physical violence." Tortora, 922 F.2d at 884. Rather, "[t]his also refers to the danger that the Defendant might engage in criminal activity to the detriment of the community." Patriarca, 776 F. Supp. at 597. Importantly, "courts cannot demand more than an 'objectively reasonable assurance of community safety.'" Tortora, 922 F.2d at 884.

Of particular relevance to Simone and Gioaachini, the First Circuit has emphasized:

> [A]ssociation with a criminal cabal [like the LCN] . . . membership in a[n LCN] Family, and . . . avowals to further the Family's goals, through illicit activity, are <u>highly relevant</u> considerations under 18 U.S.C. §3142(g). Appell[ants are] being judged, as [t]he[y] should be, as . . . individual[s], with one relevant characteristic being [their] devotion to the Mafia and [their] pledge[s] to violate the law whenever necessary to further its ends.

Id. at 885 n.6 (emphasis added). See also Patriarca, 776 F. Supp. at 599 ("Mafia membership at any level entails a degree of potential dangerousness."). Indeed, both Simone and Gioacchini,

> [are] precisely the type of defendant Congress had in mind when it wrote of the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of the revocation of release can reasonable assure the safety of the community or other persons." . . .

Tortora, 922 F.2d at 886.

### A. Magistrate Judge Alexander's findings and Order are proper.

Given these First Circuit admonitions, this Court should

-6-

adopt and affirm Magistrate Judge Alexander's findings and Order because she applied the proper evidentiary standards to her evaluation of the appropriate factors for the various bases supporting the government's motion for detention. She began her analysis by noting correctly that the government had different evidentiary burdens for its detention motions based on risk of flight, 18 U.S.C. §3142(f)(2)(A), and dangerousness, 18 U.S.C. §§3142(e) and (f)(1)(A): preponderance of the evidence for the former and clear and convincing evidence for the latter. (See Jan. 16, 2004 Ord. at 4-5.) Magistrate Judge Alexander then applied each of these standards to her assessment of the factors set forth in 18 U.S.C. §3142(g), following the First Circuit's direction in <u>Tortora</u>. (See <u>id.</u> at 5-8.)

In particular, Magistrate Judge Alexander found that "the alleged offenses must be taken seriously," noting that "the crimes with which the defendants are charged constituted the type of offenses courts often find to be violent, serious, and indicative of a risk of flight." (Jan. 16, 2004 Ord. at 5-6.) She also noted that the government provided evidence demonstrating that each of Simone and Gioacchini possessed firearms subsequent to sustaining felony convictions. She concluded that such conduct "demonstrates a <u>great risk of violence</u> as well as an <u>overt disregard for the law</u>." (<u>Id.</u> at 6 (emphasis added).)

Magistrate Judge Alexander also weighed the significant criminal histories of Simone and Gioacchini. Simone has "convictions for armed robbery, possession of a firearm and conspiracy to commit murder." (Id.) The last conviction resulted from Simone's involvement in the brutal 1981 LCN-engineered murder of Angelo Patrizzi whose badly decomposed body was discovered in the trunk of a car in the parking lot of a motel in Lynn, Massachusetts. Patrizzi died of strangulation after his legs had been tightly hog-tied posteriorly to his neck. (See Tutungian Aff. at 8.) Despite the passage of over twenty years since this violent killing, Magistrate Judge Alexander found in this case that Simone's intercepted conversations still "indicate an <u>overt capacity for the ultimate violence (homicide)</u> and a <u>clear disregard for the law</u> and social standards." (Jan. 16, 2004 Ord. at 4 (emphasis added).)

Similarly, Gioacchini has a 1991 federal conviction before this Court for racketeering, racketeering conspiracy, extortion and interstate transportion in aid of racketeering, evidencing his long-running involvement with the New England LCN. (See Tutungian Aff. at 5-6.) His intercepted statements, according to Magistrate Judge Alexander, "reveal[] Mr. Gioacchini's steadfast resolve to execute the 'plan' in order to remove some of the 'troubles' he was experiencing." (Id.) Indeed, Simone "himself was recorded as he discussed Mr. Gioacchini's dangerousness."

(Id.)  Magistrate Judge Alexander emphasized that Gioacchini revealed his dangerousness when he was intercepted as he threatened: "'If you're looking to hurt me, I'm going to kill you.'" (Id. at 7.)  Elsewhere, as noted by the Court, Gioacchini pledged to Simone: "'Now I'll quit f--ing work and I'll devote my time to the f--ing street and I'll annihilate everybody.'" (Id.)  Based on these findings and the government's other evidence, Magistrate Judge Alexander concluded:

> In light of the foregoing, and in consideration of the penalties the defendants face if convicted, the Court finds by a preponderance of the evidence that the defendants, <u>despite their ties to the community</u>, pose a significant risk of flight and have the means to flee, and the Court further concludes that the flight risk cannot be contained by any condition or combination of conditions. . . .  The Court also finds by clear and convincing evidence that there are no conditions of release which could assure the safety of the community if they were released pending trial.

(Jan. 16, 2004 Ord. at 8 (emphasis added).)  The recited evidence amply supported this conclusion by Magistrate Judge Alexander which this Court should adopt and affirm.

### B. The record otherwise supports detention.

Magistrate Judge Alexander referred summarily to the "credible testimony and affidavit of Detective Lieutenant John Tutungian of the Massachusetts State Police," the latter of which "sets forth some ninety paragraphs (over seventy-five pages) of allegations" regarding which he "was thoroughly cross-examined."

-9-

(Id. at 2.)  The government emphasized certain of that evidence at the detention hearings and re-emphasizes it now.

### 1. Simone and Gioacchini are violent and dangerous individuals.

Simone's criminal history evidences his historical demonstrable violence.  In addition to his conviction for the gangland-style murder of Angelo Patrizzi, Simone has committed other violent crimes for which he has received prison sentences.  For instance, he revealed his dangerousness early in 1967 when he was convicted of assault to kill and armed robbery which earned him a ten-year prison sentence.  In 1973, Simone was convicted of possessing a firearm, resulting in a four- to five-year suspended sentence.  He has two pending charges indicative of his ongoing violent proclivities: a December 2000 charge for possession of a firearm and a May 9, 2002 assault and battery charge resulting from an allegedly physical altercation with his girlfriend in front of her minor child.[7]  Because this alleged assault occurred during Simone's pretrial release on his state firearms charge from 2000, Simone was jailed for 60 days.

Similarly, Gioacchini's criminal record outlines his LCN history and aptitude for violence.  He has a 1990 conviction for LCN-related racketeering and he has admitted to the robbery of

---

[7]The girlfriend-victim has since filed an affidavit in which she denied the factual basis supporting the charge.

-10-

convicted drug dealer Joseph Gassiraro. (Tutungian Aff. at 36.) More recently, he was intercepted as he discussed his ongoing livelihood in organized crime, describing how he continued to collect "rent," the money which a bookmaker must pay to the LCN or other organized crime enterprise in order to continue operating, and needed $700 per week to meet his expenses. (Id. at 37-38.) These rent payments are inherently extortionate, showing Gioacchini's ongoing criminal violence. (See id. at 6.)

The LCN involvement of Simone and Gioacchini amplify their dangerousness. As this Court has emphasized: "[A] defendant's role in the Mafia is relevant because leaders or individuals with the ability to direct the criminal activity of others pose a special threat to the safety of the community." DiGiacomo, 746 F. Supp. at 1182. That circumstance requires the court to "accept[] that Mafia membership at any level inherently entails a degree of dangerousness and, because of the far-flung nature of the organization, special risks of flight." Id.

Simone and Gioacchini were intercepted repeatedly during the investigation of this case pledging in effect that their violent pasts would be their violent prologues. After enlisting Rhode Island LCN Capo Matthew Guglielmetti to assist them in their LCN-related dispute, Simone and Giaocchini remained uncertain of Guglielmetti's loyalties. Consequently, Simone and Gioacchini discussed the backup plan to deal with Guglielmetti if he proved