UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 03-CR-10356-MLW

UNITED STATES

VS.

FREDERICK A. SIMONE,
a/k/a FREDDY, a/k/a
THE NEIGHBOR,

VINCENT C. GIOCCHINI,
a/k/a DEE DEE; and

FRANCIS WHITE, a/k/a
THE WHITE-HAIRED GUY

**DEFENDANTS, VINCENT C. GIOCCHINI AND FREDERICK A. SIMONE'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTIONS TO SUPPRESS**

I. THE DEFENDANTS HAVE SHOWN BY A PREPONDERANCE OF THE EVIDENCE A LIKELIHOOD OF MISREPRESENTATION OR UNDERREPRESENTATION SO AS TO MAKE THE AFFIDAVIT IN SUPPORT OF THE WARRANT MISLEADING AND A <u>FRANKS</u> HEARING SHOULD BE ALLOWED

Title 18 U.S.C. §2518(1)(c) has an "absolute requirement that mandates a "full and complete statement of the facts and circumstances relied upon by the applicant to justify his (or her) belief that an order should be issued." Title 18 U.S.C. 2518(1)(C). This section should be compared to Title 18 U.S.C. §2518(1)(B) which states unequivocally that an application for an order authorizing electronic surveillance must include;

> "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

This Court has contrasted these two provisions, noting that the probable cause requirement under (1)(c) may be modified by the use of government discretion to disclose less than all of the evidence known to exist so long as there is no effort to mislead the Court into issuing a warrant. This provision is contrasted with (1)(B) which requires a full and complete disclosure of all other investigative techniques.

This requirement is absolute. **United States vs. Salemme**, 978 F.Supp. 343 (D. Mass. 1997), **United States vs. Ferrara**, 771 F. Supp. 1266 (D. Mass. 1991). The government's statutory obligation is to make a full and complete statement concerning the intrusive weapon of electronic surveillance. This mandates a full and complete reporting of the affiant/applicant who had a duty to "obtain and disclose to the Court any relevant information in the possession of (the FBI). **United States vs. Salemme**, supra citing **United States vs. Mastroianni**, 749 F.2d 900 (1st Cir. 1984)(affiant should have made a final check with all agencies involved before submitting the affidavit.[1]

As in Salemme, neither Roberto nor Dezotell were referenced in the Russolillo affidavit submitted to State Judge Botsford in his request for electronic surveillance. The necessity requirement set forth in Title 18 U.S.C. §2518(1)(c) is a constitutionally driven statutory obligation "rooted in the Fourth Amendment requirement that searches be reasonable" and in the Supreme Court's statement set forth in **United States vs. Berger**, 388 U.S. 41 (1967) and **Katz vs. United States**, 389 U.S. 347 (1967). Courts should authorize no greater invasion of privacy than necessary under the circumstances. **United States vs. Salemme**, 978 F.Supp. 343 (1997) citing **United States vs. Ferrera**, 771 F.Supp. 1266 (D. Mass 1991).

---

[1] In this case it is conceded by the government that the state police investigation included joint participation of the FBI, hence a joint federal-state investigation.

This Court noted that the standard set forth in **Franks vs. Delaware**, 438 U.S. 154 (1978) applies to omissions from an application or affidavit as well as outright misrepresentations. Citing **United States vs. Hadfield**, 918 F.2 987 (1st Cir. 1990), **United States vs. Cole**, 807 F2 262 (1st Cir. 1986).

Under the Franks standard, a defendant must show by only a preponderance of the evidence that facts were omitted with the intent to mislead or in reckless disregard of whether they thereby made the application and/or affidavit misleading. **United States vs. Colkley**, 899 F2 297 (4th Cir. 1990), **United States vs. Hadfield**, 918 F2 987 (1st Cir. 1990).

Misrepresentations or omissions are material where a judge might have been prompted to decline the request if the information had been set forth in the application. In the instant case, the defendant has submitted by affidavit the evidence in a light that may be evaluated by this Court under the preponderance of the evidence standard. It is submitted that the DeJuneas and Harris-Daley affidavits are clearly directed at the reasonable inference that Dezotell and Roberto, at the time in question, were informants working for the FBI. The fact that the declarant, Dezotell, may have been intoxicated does not lessen the powerful impact of the Harris-Daley affidavit.[2]

In a similar vein, the inferences raised by the DeJuneas affidavit do not disappear with a submission from the State of Florida authorities. His criminal exposure was nevertheless clear and the influence that Massachusetts had over Florida was obvious. The defendant has submitted evidence that should satisfy the preponderance of the

---

[2] Harris-Daley is emotionally connected to Simone as the government sets out, but counter weight to that is her position as a member of the bar. Her credibility is for the Court to evaluate objectively.

evidence standard. The affidavits are not conclusory but fact driven and demonstrate reasonable inferences on their status as informants.

The affidavits clearly point to the Russolillo affidavits that are alleged to contain false representations by omission as well as affirmative representation. Nowhere does the government submit a denial that Roberto or Dezotell were not cooperating with the government. Apparently, the government concedes that an inebriated Dezotell may have made his telling admission to Harris-Daley. The government likewise acknowledges Roberto's defalcations and criminal activity that apparently never resulted in criminal charges against either Roberto or his immediate family as set forth in the DeJuneas affidavit.

It is axiomatic that the government has a privilege and obligation to try and protect its informants. Implicit in this privilege is the government's right to refuse to confirm or deny an informant's identity. **United States vs. Estrella**, 567 F2 1151 (1st Cir. 1977), **Roviaro vs. United States,** 353 U.S. 53 (1957). The Roviaro privilege must, however, give way whenever the disclosure of an informant's identity or the content of the communication is relevant and helpful to the defense of the accused. Roviaro, supra at 60-61. See **United States vs. Formanzyyk**, 949 F2 526 (1st Cir. 1991).

If a person named as a target or co-conspirator is also an informant, whether or not he is a "CW" or a "CI" or a person who will or will not agree to "testify" or "wear a wire" that fact must be disclosed to the issuing magistrate who is being asked to issue a warrant authorizing electronic surveillance. Information that the target was cooperating with the FBI during the period set forth in the affidavit or application which was not

disclosed is "alone, sufficient to satisfy the first prong of the test for obtaining a Franks hearing." **United States vs. Salemme**, 978 F.Supp. 343 (1997) at 351.

The materiality which is the second prong required by Franks is clearly met where the government seeks to record conduct of a target where the target, in fact, is an informant. This fact is not only exculpatory at trial and potentially devastating in its impact on the allegations of an "illegal organization" of which the target/informant is a member but also a fact that if revealed to a judge who weighs the necessity of such an intrusive law enforcement tool would militate against issuing the order. Further, there would at least be a material and focused inquiry by the issuing judge as to whether or not the informant would voluntarily or if compelled by immunity and grand jury subpoena testify or even wear a body wire.

In **United States vs. Simpson**, 813 F2 1462 (9th Cir. 1987) the Court held that a Franks hearing was warranted where the affiant did not disclose on an application the fact that an indicated informant was closely involved with a target alleged to be insulated (as in the Russolillo affidavit) from informants or other law enforcement techniques.[3]

It is interesting to note an off-shoot of this issue. Simone is alleged not only to have conspired with Roberto as well as Dezotell but also is alleged to have possessed a firearm. Any evidence regarding the informant status of either of these "targets" is also exculpatory to the RICO and conspiracy allegations but also may lead to exculpatory evidence such as possession or ownership of the firearm. See **United States vs. LaRouche Campaign,** 695 F.Supp. 1290 (D. Mass. 1988), **United States vs. Bagley**,

---

[3] It appeared, however, in Simpson, that the informant was available to testify. In this case, there is no indication that the informant was available.

473 U.S. 667 (1985) (impeachment evidence must be disclosed along with exculpatory evidence).

As in Salemme, evidence of alleged combination with a government agent will be "particularly promising." **Salemme**, 978 F. Supp. 343 at 552.  Citing **United States vs. Duff**, 76 F3 122 (7th Cir. 1996) (agreement with police agent is not a conspiracy), **United States vs. Nason**, 9 F3 155, 161, n.2 (1st Cir. 1993) citing **United States vs. DeBright**, 742 F2 1196 (9th Cir. 1984).

In this case, there is not only no indication of whether or not these "targets" were informants but there was no indication of whether any effort was made to have them wear a wire or provide additional information to the investigation.  As the Court noted in **United States vs. Ferrara**, 771 F.Supp. 1266 (D.Mass 1991);

> "If true, the failure of the application to disclose or adequately describe….(named individuals) as informants is relevant to whether the government made the 'full and complete statement' concerning necessity required by §2518(1)(c) and depending on the facts, possibly material to the question whether any electronic surveillance was reasonably required. More specifically, if a reasonable judge had been informed that the government had two informants of the quality of (named individuals) and that one of them expected to attend a Mafia induction ceremony…at a minimum he or she would have been likely to ask if the informants were willing to wear a recording device or testify, either voluntarily or pursuant to a compulsion and immunity order." Ferrara at 1277.

The full and complete statement requirement is set out clearly in Title 18 U.S.C. §2518(c).  This is a federal mandate setting forth not only a statutory obligation but one grounded in constitutional law.  The Massachusetts statute sets forth the same requirement but at least in a semantic sense.  In a practical sense it requires somewhat less in information than the federal counterpart.  This may, however be a distinction without a difference.

In **Commonwealth vs. Fenderson**, 410 Mass. 82 (1991) the Supreme Judicial Court in Massachusetts, perhaps cognizant of the fact that the federal law is the watermark for minimal constitutional protection noted that the same full statement must be made to the magistrate.

In **United States vs. Giordano**, 416 U.S. 505 (1974) the Supreme Court of the United States held that Title III of the Omnibus Crime Control and Safe Street Act of 1968 provides in Title 18 U.S.C. §2516 (1) that the government may request electronic interception but if the communication was "unlawfully intercepted" it would violate Title 18 U.S.C. §2525 and would be suppressed as being obtained in violation of 18 U.S.C. §2518 (10)(a)(i).

In Giordano the Court spoke clearly to the fact that under 2518 (10)(a)(i) the words "unlawfully intercepted" are not limited to constitutional violations but the statute was intended to require suppression where there is a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intent to limit the use of intercept procedures to that situations clearly calling for the employment of this extraordinary investigative tool.

The Giordano Court did note the distinction between constitutional and statutory violation. Defendant, Simone, submits that the issue squarely presented to this Court is that statutory violation in the failure of the government affiant to fully and plainly set forth all of its steps utilizing normal investigative techniques including the availability of informants. This is not, as the government argues, a "sub-facial" challenge but rather a clear challenge to the failure of the government to comply with the statutory directive.

> "The words 'unlawfully intercepted' are themselves not limited to constitutional violations and we think Congress intended to require

suppression where there is a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." Giordano at 526.

## II. THE APPROPRIATE LAW TO BE APPLIED TO THE FACTS OF THIS CASE IS FEDERAL LAW

A Massachusetts Superior 'Court judge issued the wiretap warrants as well as the bug warrant. The defendant has submitted by memorandum and affidavit the contention that the necessity requirement that is a pre-requisite to the appropriate issuance of an electronic surveillance warrant was not met. The defendant argues that in the first affidavit in support of the application it is clear that the requisite necessity showing was not present. The subsequent application seeking an order to place a bug in the defendant's home was not only supported by a factual showing of necessity but was contra-indicated by the success that the earlier wiretaps apparently reaped.

The Massachusetts wiretap statute, M.G.L. Chapter 272 §99(E)(3) states, inter alia, that a warrant authorizing electronic surveillance may issue only upon;

> "(a) showing by the applicant that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried."

The Supreme Judicial court has indicated that this statutory provision is "practically identical" to the federal wiretap statute. **Commonwealth vs. Fenderson**, 410 Mass. 82 (1991), **Commonwealth vs. Vitello**, 367 Mass. 224 (1975).

The government seeks to dilute the clear, stark statutory mandate under (1)(C) that requires a "full and complete statement" by suggesting that any indication by

inference or conjecture that normal investigative techniques have or would fail if attempted. The government cites **United States vs. Ashley**, 876 F2 at 1073. Ashley, however, is different to the facts set forth herein. In the Ashley case, the First Circuit reversed Judge Pettine in an order suppressing communications intercepted in an electronic surveillance wiretap. The Court noted that the government did, in fact, set forth in a detailed factual manner the investigative techniques that either failed or would either be too dangerous or would fail if implemented. The detail and efforts these investigators listed is illustrative of the minimal, conclusory and, quite frankly, inadequate statements in the Rusollilo affidavit.

In Ashley, the Court noted that the investigators conducted surveillance, had agent to defendant body wire conversations, conducted hand to hand sales between defendants and agents. Further, death threats were made to agents and families, one agent was even patted down to see if he wore a wire. Finally, and in contrast to the allegation that Simone was the target and head of this "organization" the agents in Ashley knew that they could gather evidence of the major suppliers, not some low echelon bookmaker or "participant" in this alleged conspiracy.

When the government seeks permission to conduct electronic surveillance the application and affidavit must, as a matter of law, show that a good faith effort was made to utilize normal investigative techniques yet they "met obstacles." **United States vs. Paris Lopez**, 72 F.Supp. 2d 5 (D.P.R. 1999). See also **United States vs. London**, 65 F3 1227 (1st Cir. 1995). There must be a factually sound basis for the reviewing court to determine that the government made a good faith effort to run the gamut of normal investigative techniques.

Although the craftiness or wariness of the target may be considered by the Court, **United States vs. Abou-Saada**, 785 F2 at 12, as well as the experience of the agents such as Tutungian and his "decade of experience."[4]  See **United States vs. Rodriguez**, 606 F.Supp. 1363 (D. Mass. 1985).  The Court is left with bare conclusory, repetitive and speculative statements of Rusollilo which is not enough.  **United States vs. DiMuro**, 540 F2 503 (1st Cir. 1976) cert. den. 429 U.S. 1038 (1977) and that is before the Court considers the issue of misrepresentation and failure to disclose the use of all investigative techniques.

Finally, when the Court considers Ashley and compares it to this case one salient factor stands out.  In Ashley, the Court pointedly noted that it was not presented with any allegation of misstatement or misrepresentation.  The Court noted that such an affidavit is facially sufficient and its sufficiency must be examined on or within the four corners.  In this case, the defendant presents evidence that shows that the statutory directive of the legislature was not complied with as it relates to §2516(1)(C).  It is submitted that the appropriate standard of proof is set forth in **United States vs. Giordano**, 416 U.S. 505 (1994).  The violation of clear statutory directive is the issue, not the "good faith" of the government.  **United States vs. Salemme**, 91 F.Supp. 2d at 358.

In the event the government argument that sub-facial attack requires a substantial preliminary showing as set forth in Franks, the defendants submit that the affidavits herein do raise the showing in a sufficient fashion and to a preponderance of the evidence.  The Court in **United States vs. Cunningham**, 113 F3 289 (1st Cir. 1997) specifically declined to read the "good faith" exception of **United States vs. Leon**, 468

---

[4] Which seems to diminish when his cross examination at the detention hearing is considered.  His recall was limited and expertise admittedly non-existent.

U.S. 897 (1984) into Title III. The defendant here has shown obvious "intent" through the failure to disclose the informant status of two supposed targets, coupled with the facially insufficient showing of "necessity." The government seems to argue that even if these named individuals were, in fact, informants, it is of little impact to the apparent need for electronic surveillance. This is an incredible argument. Clearly, as is indicated above, the failure to disclose their informant status misleads the Court and clearly flies in the face of Title III. This omission is clearly material and is dispositive to the case. A showing has been made and the defendants should have the opportunity of a <u>Franks</u> hearing.

> **III.    DOES THE STATE CASE OF <u>COMMONWEALTH VS. JARABEK</u>, 384 MASS. 293 (1981)(JAROBEK I) OR THE FEDERAL CASE OF <u>UNITED STATES VS. JARABEK</u>, 726 F2 889 (1984) IMPACT THE INSTANT CASE?**

The defendants submit that this Court would be applying federal law as set forth in Title III to the warrant in the case at bar. In **United States vs. Jarabek**, 726 F2 889 (1984) (Jarabek II) the First Circuit discussed the issue of joint state and federal prosecution and held that the appropriate standard would be federal law. In the state Jarabek opinion, Jarabek I at 384 Mass. 293 (1981) the Massachusetts Supreme Judicial Court noted that despite the "heavy federal presence" in the body of the FBI and an assistant United States attorney, this was at all times a state prosecution. In ordering suppression of the recorded conversation but <u>not</u> live testimony, the Court would not apply the M.G.L. Chapter 272 §99(D)(1) law enforcement exception as this was a state investigation.

In this case it is apparent that there was a main state prosecution with some federal presence. The fact appears that this was at all times intended to be a state

prosecution nevertheless, the federal law would apply in this Court's determination of the validity of the application and its compliance with the requirement of full disclosure and necessity.[5]

The government agent, in this case, Rusollilo, did not comply with his mandated duty of full disclosure as required by 18 U.S.C. §2518(1)(C) and 18 U.S.C. §2518(3)(C). The agent did not disclose all information regarding the participation of all agencies in the investigation. See **United States vs. Mastroianni,** 749 F2 900 (1st Cir. 1984). Again, as in Ashley, of significant concern is whether the defendant suggests, as in this case, that there are misrepresentations or a failure to make full disclosure. See **In re: Application for Interception of Wire Communications**, 2 F.Supp. 2d 177 (1998)(D. Mass.) where the Court noted that "applications which are found to be incomplete or materially misleading regarding the necessity for electronic surveillance may result in suppression." (citing with approval and caution borne out of revelations during the hearings of **United States vs. Salemme**, 978 F. Supp. 364 (D.Mass. 1997), **United States vs. Salemme**, 978 F.Supp. 375 (D.Mass. 1997), **United States vs. Salemme**, 978 F. Supp. 379 (D. Mass 1997), **United States vs. Salemme**, 978 F.Supp. 386 (D. Mass. 1997), **United States vs. Salemme,** 978 F. Supp. 390 (D. Mass. 1997).

As the Court stated in **In re Application for Interception of Wire Communications**, supra;

> "the independent determination by a judicial officer-rather than a law enforcement officer of the necessity of electronic surveillance undergirds the very constitutionality of Title III. Indeed, it is this independent judicial assessment that ensures that electronic surveillance is

---

[5] Likewise it is immaterial to this Court's review that Massachusetts does not permit one party consent recordings. See **Commonwealth vs. Blood**, 400 Mass. 61 (1987). The Blood decision stands on interpretation of the Massachusetts Constitution.

consistent with the dictates of the Fourth Amendment." Citing <u>Salemme</u> at 978 F. Supp. At 348-349.

    Frederick Simone
    By his attorney


    /s/Kevin J. Reddington"



    Vincent C. Giocchini,
    By his attorney


    /s/ Robert George, Esq.