FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 FEB -9 ᵢ P 12: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA )
)
V. ) CRIMINAL NO. 03-10356-MLW
)
VINCENT C. GIOACCHINI )
A/K/A DEE DEE )

## GOVERNMENT'S SUBMISSION REGARDING DEFENDANT'S CHANGE OF PLEA

The United States of America, by its undersigned attorneys, respectfully submits this memorandum regarding defendant VINCENT C. GIOACCHINI ("Gioacchini") change of plea to the Indictment in the above-captioned case. Gioacchini has agreed to plead guilty to Racketeering Acts 6, 7, 8, 10 and 11 of Counts One and Two, and substantive Counts Seven, Eight, Nine, Ten and Twelve of the Indictment. The elements and penalties for the pertinent offenses and crimes are as follows:

### A.    RICO - Counts One and Two

Title 18, United States Code, Section 1962, provides for a maximum sentence of twenty years, a $250,000 fine, $100 special assessment, and three years' supervised release.

Counts One and Two allege that at all times material to the allegations contained in this Indictment, in the District of Massachusetts and elsewhere, the defendant and others were members and associates of a criminal organization, commonly known as the New England Family of La Cosa Nostra, an Enterprise as

1

defined by Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact.  The Enterprise
was engaged in, and its activities affected, interstate and
foreign commerce.  The Enterprise including its leadership,
membership, and associates engaged in various criminal
activities, consisting of acts indictable under Title 18, United
States Code, Sections 892 and 894 (relating to making
extortionate extensions of credit and collecting extensions of
credit by extortionate means); Section 1951 (relating to
interference with commerce by extortion); Section 1952 (relating
to interstate travel in aid of racketeering); and the collection
of unlawful debt within the meaning of Title 18, United States
Code, Section 1961(6).  The defendant committed, aided and
abetted, and conspired with others in the commission of
Racketeering Acts 6, 7, 8, 10 and 11.  The racketeering activity
includes:

Travel and causing travel to occur in interstate commerce
between the Commonwealth of Massachusetts and the State of Rhode
Island with the intent to promote, manage, establish, carry on,
and facilitate the promotion, management, establishment, and
carrying on of unlawful activity, to wit, (1) a business
Enterprise involving gambling in violation of Massachusetts
General Laws, Chapter 271, Sections 16A, 17, 17A, and 22, and
Title 18, United States Code, Section 1955, and (2) extortion in

2

violation of Title 18, United States Code, Sections 892, 893,
894, and 1951, and Massachusetts General Laws, Chapter 265,
Section 25 and thereafter did perform and attempt to perform acts
to promote, manage, establish, carry on, and facilitate the
promotion, management, establishment, and carrying on of said
unlawful activity, in violation of Title 18, United States Code,
Sections 1952 and 2 and conspiracy to violate the Travel Act, in
violation of Title 18 U.S.C. §371. [Racketeering Acts 10 and 11
of Counts One and Two and Count 12]

        Counts Seven, Eight and Nine charge the defendant with
affecting interstate commerce by means of extortion, in violation
of the Hobbs Act, 18 U.S.C. §1951(a).

        Title 18, United States Code, Subsections 1962 (c) and (d),
provide as follows:

> (c)  It shall be unlawful for any person employed
> by or associated with any enterprise engaged in,
> or the activities of which affect, interstate or
> foreign commerce, to conduct or participate
> directly of indirectly, in the conduct of such
> enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful
> debt.
>
> (d)   It shall be unlawful for any person to conspire
> to violate any of the provisions of subsection...(c) of
> this section.

        Section 1961 defines the terms "enterprise," "unlawful
debt," and "pattern of racketeering activity" used in Section
1962 as follows:

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

Section 1961 (1) also defines "racketeering activity;" in relevant part, "racketeering activity" means:

(B) [A]ny act which is indictable under any of the following provisions of Title 18, United States Code, ... sections 891-894 (relating to extortionate credit transactions, ...section 1951 (relating to interference with commerce...extortion), section 1952 (relating to racketeering), ...section 1956 (relating to the laundering of monetary instruments).

In order to convict the defendant of violating Section 1962(c), the government must prove:

*first:*    the existence of an "enterprise";

*second:*   that the defendant was employed by or associated with the enterprise;

*third:*    that the defendant engaged in a pattern of racketeering activity, i.e., that the defendant agreed to commit, or in fact committed, two or more specified predicate crimes; and

*fourth:*   that through this pattern of racketeering activity the defendant knowingly and willfully participated, directly or indirectly, in the conduct of the affairs of the enterprise.

United States v. Shifman, 124 F.3d 31, 34 (1st Cir. 1997); United

States v. Boylan, 898 F.2d 230, 241 (1st Cir. 1990); United

4

States v. Angiulo, 847 F.2d 956 (1st Cir. 1988); see United States v. Ruiz, 905 F.2d 499, 504 (1st Cir. 1990). Finally, the evidence must show that the enterprise engaged in activities which affected interstate commerce.

As used in 18 U.S.C. §1962, the term "enterprise" includes any "group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). The Supreme Court held in United States v. Turkette, 452 U.S. 576 (1981), that a wholly illegal organization may be an enterprise for RICO purposes.

**B.    Interstate Travel in Aid of Racketeering and conspiracy to do so - Counts Ten and Twelve, Racketeering Acts 10 and 11 of Counts One and Two**

Title 18, United States Code, Section 1952, provides for a five-year maximum term of incarceration, a fine of $250,000, and payment of $100 Mandatory Special Assessment.[1]

Title 18, United States Code, Section 1952, states in pertinent part:

   (a)   Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to:

       (1)   distribute the proceeds of any unlawful activity; or

                    * * *

---

[1]Title 18 U.S.C. §371 provides that a conspiracy to violate the Travel Act is punishable to the same extent as a substantive violation - that is - five-year maximum term of incarceration, a fine of $250,000, and payment of $100 Mandatory Special Assessment.

      (3)  otherwise promote, manage, establish,
            carry on, or facilitate the promotion,
            management, establishment, or carrying
            on, of any unlawful activity

and thereafter performs or attempts to perform

any of the acts specified in subparagraph (1), (2) and (3), shall

be punished.

    (b)  As used in this section (i) "unlawful activity"
        means (1) any business enterprise involving
        gambling...in violation of the laws of the State
        in which they are committed or of the United
        States, (2) extortion...in violation of the laws
        of the State in which committed or of the United
        States....

The essential elements of a Section 1952 violation are:

    *first:*    the defendant traveled or caused another to travel
              interstate;

    *second:*   that this travel was done with the intent to
              promote, manage, establish, or carry on an
              unlawful activity;

    *third:*    after the interstate travel, the defendant
              performed or attempted to perform acts in
              furtherance of this same unlawful activity.

United States v. Arruda, 715 F.2d 671 (1st Cir. 1983).

    **C.   Hobbs Act Extortion - 18 U.S.C. 1951 - Counts Seven
       through Nine, Racketeering Acts 6 through 8 of Counts
       One and Two**

    Title 18, United States Code, Section 1951, provides, in

pertinent part:

        Whoever in any way or degree obstructs,
        delays, or affects commerce or the movement
        of any article or commodity in commerce, by
        robbery or extortion or attempts or conspires

> so to do, or commits or threatens physical
> violence to any person or property in
> furtherance of a plan or purpose to do
> anything in violation of this section shall
> be [punished].

The essential elements of a Hobbs Act violation are: 1) the defendant induced his victim to part with property; 2) the defendant did so by the wrongful use of actual or threatened force, violence, or fear; and 3) that in doing so, interstate commerce was in any way or degree obstructed, delayed, or affected.  Stirone v. United States, 361 U.S. 212, 218 (1960). United States v. Grassi, 783 F.2d 1572, 1577 (11th Cir. 1986).

To prove extortion, the government must show the defendant wrongfully generated or exploited fear in the victim with the purpose of inducing him to part with his property.  United States v. Goodoak, 836 F.2d 708, 712 (1st Cir. 1988); see United States v. Abelis, 146 F.3d 73, 83 (2d Cir. 1998).  This does not mean that the government must produce evidence of an actual threat. Rather, the government satisfies its burden by showing that the victim feared the result of his failure to comply, and that the fear was reasonable given the surrounding circumstances.  United States v. Bucci, 839 F.2d 825, 828 (1st Cir. 1988).  It is also not necessary to prove the defendant actually created the fear in the mind of the victim; it is sufficient to show that the defendant exploited the victim's reasonable fear.  United States v. Rivera-Medina, 845 F.2d 12, 14 (1st Cir. 1988).

Numerous courts have held that evidence of the defendant's reputation and his involvement in organized crime is therefore relevant in a Hobbs Act prosecution.  Grassi, 783 F.2d at 1577-78; Goodoak, 836 F.2d at 712-15; United States v. Russo, 708 F.2d 209, 214 (6th Cir. 1983).  Such evidence is probative on the issue of the victim's state of mind and thus on the ultimate issue of whether the defendant induced his consent with the wrongful use of actual or threatened force, violence, or fear. See Goodoak, 836 F.2d at 713.  The First Circuit has stated that the state of mind of a victim of extortion - and thus, the question whether a defendant has attempted to induce fear in a victim - "depends not only on what the defendant has said or done to the victim but also on what the victim independently believes about the context in which both are operating."  Id. at 713. Evidence of a defendant's reputation for violence, prior convictions, or organized crime connections, is thus relevant to prove the victim's state of mind, see United States v. Oreto, 37 F.3d 739, 749-50 (1st Cir. 1994) (18 U.S.C. §892 case), and to the evaluation of the reasonableness of the victim's fears, United States v. Zannino, 895 F.2d 1, 11 (1st Cir. 1990).  See, e.g., Russo, 708 F.2d at 214 (evidence of defendant's reputation for being connected to mafia admissible to show state of mind of victims of extortion at time they consented to give up property; reputation evidence admissible both to show creation of fear of

8

physical violence and fear of actual ability to inflict economic loss); United States v. DeVincent, 546 F.2d 452, 456-57 (1st Cir. 1976) (in loansharking case, defendant's prior conviction for violent crime - even one unrelated to defendant's lending activities - admissible because it may, if known to debtor, influence debtor's reasonable expectations as to how lender may collect loan); see also Abelis, 146 F.3d at 83 (government required to prove, in Hobbs Act case, not merely that defendants had violent reputation as member of Russian mafia, but that defendants "knowingly and intentionally, with a bad purpose, wrongfully and affirmatively exploited fear to obtain money").

The Hobbs Act extends to fear of economic harm in addition to the fear of physical violence. Bucci, 839 F.2d at 827. "[T]he possibility of lost business opportunities can create a fear of economic loss. United States v. Hathaway, 534 F.2d 386, 396 (1st Cir. 1976).

Finally, the government need only show "a realistic probability of a de minimis effect on interstate commerce, in order to bring extortion within the reach of the Hobbs Act." Rivera-Medina, 845 F.2d at 15. Moreover, the government need not prove that the defendant actually intended to obstruct or affect interstate commerce. United States v. Staszcuk, 517 F.2d 53, 59 (7th Cir. 1975). It is sufficient if one of the natural effects of the offense is an obstruction of commerce. United States v.

Scacchetti, 668 F.2d 643, 648-49 (2d Cir. 1982). The extortion
of money from an illegal gambling business, wherein some de
minimis effect on interstate commerce is shown, violates the
Hobbs Act. Rivera-Medina, 845 F.2d at 14-15 (extortion of
proceeds of local numbers racket in Puerto Rico affected
interstate commerce because operator purchased items necessary to
operation which originated in United States). In addition,
evidence of a positive or beneficial impact on interstate
commerce is also sufficient to satisfy the commerce element.
United States Mattson, 671 F.2d 1020, 1024 (7th Cir. 1982);
United States v. Hedman, 630 F.2d 1184, 1195-96 n.7 (7th Cir.
1980).

Each separate extortionate payment pursuant to a single
ongoing scheme constitutes a separate count and racketeering act.
United States v. Addonizio, 451 F.2d 49, 59-60 (3d Cir. 1971). A
conspiracy to violate the Hobbs Act constitutes a separate
offense from a substantive violation. Therefore, separate counts
must be alleged and consecutive sentences may be imposed.
Callanan v. United States, 364 U.S. 587 (1961).

The Hobbs Act also prohibits conspiracies and attempts to
extort. To prove an attempted extortion "it is sufficient merely
to show an attempt to generate fear in the victim." Goodoak, 836
F.2d at 712. No actual or even possible effect on interstate
commerce need be shown in cases involving attempt or conspiracy.

10

<u>United States v. Brantley</u>, 777 F.2d 159, 164 (4th Cir. 1985);

<u>United States v. Jannotti</u>, 673 F.2d 578, 591-94 (3d Cir. 1982).

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By

ERNEST S. DINISCO
Assistant U.S. Attorney

Dated: February 9, 2005

CERTIFICATE OF SERVICE

I, Ernest S. DiNisco, hereby certify that I have this 9th day
of February, 2005, served a copy of the within Government's
Submission Regarding Defendant's Change of Plea on Robert George,
Esquire, 138 Newbury Street, Suite 3, Boston, MA 02116, counsel
of record, by mail and facsimile.

ERNEST S. DINISCO
Assistant U.S. Attorney

11



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 1, 2005

Robert A. George, Esq
77 Newbury Street
Boston, MA 02116

Re: <u>United States v. Vincent Gioacchini</u>
      Criminal No. 03-10356-MLW

Dear Mr. George:

     This letter sets forth the Agreement between the United
States Attorney for the District of Massachusetts ("the U.S.
Attorney") and your client, Vincent Gioacchini ("Defendant"), in
the above-referenced case.  The Agreement is as follows:

     1.   <u>Change of Plea</u>

     At the earliest practicable date, Defendant shall plead
guilty to so much of Counts One and Two as charge a pattern of
racketeering activity consisting of Racketeering Acts 6, 7, 8,
10, and 11, and substantive Counts Seven, Eight, Nine, Ten, and
Twelve.  Defendant expressly and unequivocally admits that he in
fact knowingly, intentionally, and willfully committed the crimes
charged in Counts One and Two (Racketeering Acts 6, 7, 8, 10, and
11), and substantive Counts Seven, Eight, Nine, Ten, and Twelve
of the Indictment, and is in fact guilty of those offenses.  The
U.S. Attorney agrees to dismiss so much of Counts One and Two as
charge a pattern of racketeering activity consisting of
Racketeering Acts 1 and 11, and substantive Counts Three and
Thirteen following the imposition of sentence.

     2.   <u>Penalties</u>

     As to Counts One and Two, pursuant to Title 18, United

States Code, Sections 1963, Defendant faces a twenty-year maximum term of incarceration, a fine in accordance with Title 18, payment of the $100 mandatory special assessment on each Count, and three years' supervised release. As to Counts Seven, Eight and Nine, pursuant to Title 18, United States Code, Section 1951, Defendant faces a maximum twenty-year term of incarceration, a fine in accordance with Title 18, payment of the $100 mandatory special assessment on each Count, and three years' supervised release. As to Counts Ten and Twelve, pursuant to Title 18, United States Code, Section 1952, Defendant faces a maximum five-year term of incarceration, a fine in accordance with Title 18, payment of the mandatory special assessment on each Count, and three years' supervised release.

3.    Sentencing Guidelines

The sentence to be imposed upon Defendant is within the discretion of the sentencing Court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by United States v. Booker and United States v. Fanfan, ____
U.S. ___ , 2005 WL 50108 (January 12, 2005). In imposing the sentence, the Court must consult and take into account the United States Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

The parties will take the following positions at sentencing with respect to the application of the United States Sentencing Guidelines:

(a)  **Base Offense Level**

With respect to Counts One and Two, the parties agree to take the position that U.S.S.G. §§ 2E1.1(a)(2) and 2E2.1(a) apply, and that Defendant's Base Offense Level is therefore 20. With respect to Counts Seven through Nine, the parties agree to take the position that U.S.S.G. §2B3.2(a) applies, and therefore Defendant's Base Offense Level is 18. With respect to Counts Ten and Twelve, the parties agree to take the position that U.S.S.G. 2E1.2(a)(2) applies, and therefore his Base Offense Level is 20.

(b)  **Specific Offense Characteristic**

The parties agree that Defendant's Base Offense Level for Counts Seven through Nine should be increased by two levels pursuant to U.S.S.G. § 2B3.2(b)(1). The parties agree that Defendant's Base Offense Level should be increased by one level

2

pursuant to U.S.S.G. § 2B3.2(b)(2).

### (c)  Relevant Conduct

The parties recognize that Racketeering Acts 1 and 11, and substantive Counts Three and Thirteen, which the U.S. Attorney has agreed to dismiss following imposition of sentence in this case, might be deemed relevant conduct pursuant to U.S.S.G. § 1B1.3 if proven by a preponderance of the evidence at a sentencing hearing. Defendant will take the position that these racketeering acts cannot be proven by a preponderance of the evidence and therefore should not be considered relevant conduct at sentencing. In consideration of the benefits received by the government in this agreement, the government will not seek an evidentiary hearing or otherwise offer evidence to prove these or other uncharged racketeering acts at sentencing. The government reserves the right to respond to requests for information from the District Court and the United States Probation Office in this case.

### (d)  Grouping Of Closely Related Counts

The parties agree to take the position that pursuant to U.S.S.G. § 3D1.2, Defendant's Base Offense Level is increased by three levels.

### (e)  Criminal History Category

The U.S. Attorney takes no position at this time with respect to Defendant's Criminal History Category. Defendant reserves his right to argue that his criminal history category over-represents the seriousness of his criminal history pursuant to U.S.S.G. § 4A1.3(b).

The U.S. Attorney expressly reserves the right to seek an upward departure pursuant to U.S.S.G. §4A1.3 should any of Defendant's prior state convictions be vacated or Defendant's Criminal History Category otherwise change after his indictment in this case. Thus, for example, the government may contend that an upward departure under §4A1.3 is appropriate if a state-court conviction that existed at the time of Defendant's indictment is vacated and that vacation alters Defendant's Criminal History Category.

### (f)  Undischarged Term of Imprisonment

The parties agree that U.S.S.G. § 5G1.3(c) applies, and agree to recommend that this Court impose a sentence to run

3

concurrent to the sentence imposed in the matter of <u>Commonwealth v. Gioacchini</u>, Number 2002-10632.

### (g) **Acceptance of Responsibility**

Based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

(a)  Fails to admit a complete factual basis for the plea;

(b)  Fails to truthfully admit his conduct in the offenses of conviction;

(c)  Fails to provide truthful information about his financial status;

(d)  Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(e)  Intentionally fails to appear in Court or violates any condition of release;

(f)  Commits a crime; and

(g)  Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of this Agreement.

The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range established by the

4

United States Sentencing Guidelines.  Accordingly, neither the
U.S. Attorney nor Defendant will seek a departure on any ground
from the Sentencing Guidelines.

4.   Sentence Recommendation

The United States Attorney agrees to recommend to the Court
that any sentence imposed in the federal case be imposed to run
concurrent to any sentence imposed on Defendant by the state
court in the matter of Commonwealth v. Vincent Gioacchini,
Numbers 2002-10632, 1-4.

In the event of an appeal from, or collateral challenge to,
Defendant's sentence, the U.S. Attorney reserves his right to
argue the correctness of Defendant's sentence and the manner in
which the District Court determines it.

Defendant agrees that he will provide to the U.S. Attorney
expert reports, motions, memoranda of law and documentation of
any kind on which he intends to rely at sentencing not later than
twenty-one days before sentencing.  Any basis for sentencing with
respect to which all expert reports, motions, memoranda of law
and documentation have not been provided to the U.S. Attorney at
least twenty-one days before sentencing shall be deemed waived.

5.   Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to
the Clerk of the Court on or before the date of sentencing,
unless Defendant establishes to the satisfaction of the Court
that Defendant is financially unable to do so.

6.   Forfeiture

Defendant agrees to forfeit to the United States, at the
time of sentencing, $7,500 in United States currency or
negotiable instruments, all of which constitute proceeds of the
racketeering activity charged in Counts One and Two of the
Indictment.

7.   Waiver of Rights to Appeal and to Bring Collateral
     Challenge

Defendant is aware that he has the right to challenge his
sentence and guilty plea on direct appeal.  Defendant is also
aware that he may, in some circumstances, be able to argue that
his plea should be set aside, or his sentence set aside or
reduced, in a collateral challenge (such as pursuant to a motion

5

under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

> (1)   Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and
>
> (2)   The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement.

Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

   8.   <u>Waiver of Hyde Amendment Claim</u>

Defendant is aware that 111 Stat. 2440, 2520 (1997), the so-called "Hyde Amendment," authorizes courts in criminal cases to award to certain prevailing defendants attorneys' fees and other litigation expenses.  In exchange for concessions made by the U.S. Attorney in this Agreement, Defendant voluntarily and knowingly waives any claim that he might assert under this statute based in whole or in part on the U.S. Attorney's agreement in Paragraph 1 to dismiss Racketeering Acts 1 and 11, and substantive Counts Three and Thirteen.

   9.   <u>Court Not Bound By Agreement</u>

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge.  Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B).  Defendant may not withdraw his plea of guilty regardless of what sentence is

imposed.  Nor may Defendant withdraw his plea because the U.S.
Probation Office or the sentencing judge declines to follow the
Sentencing Guidelines calculations or recommendations of the
parties.  In the event that the sentencing judge declines to
follow the Sentencing Guidelines calculations or recommendations
of the U.S. Attorney, the U.S. Attorney reserves the right to
defend the sentencing judge's calculations and sentence in any
subsequent appeal or collateral challenge.

### 10.  Civil Liability

By entering into this Agreement, the U.S. Attorney does not
compromise any civil liability, including but not limited to any
tax liability, which Defendant may have incurred or may incur as
a result of his conduct and his plea of guilty to the charges
specified in paragraph one of this Agreement.

### 11.  Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court
for whatever reason, or later be withdrawn on motion of
Defendant, this Agreement shall be null and void at the option of
the U.S. Attorney.

### 12.  Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to
comply with any provision of this Agreement, has violated any
condition of his pretrial release, or has committed any crime
following his execution of this Agreement, the U.S. Attorney may,
at his sole option, be released from his commitments under this
Agreement in their entirety by notifying Defendant, through
counsel or otherwise, in writing.  The U.S. Attorney may also
pursue all remedies available to him under the law, irrespective
of whether he elects to be released from his commitments under
this Agreement.  Further, the U.S. Attorney may pursue any and
all charges which have been, or are to be, dismissed pursuant to
this Agreement.  Defendant recognizes that no such breach by him
of an obligation under this Agreement shall give rise to grounds
for withdrawal of his guilty plea.  Defendant understands that,
should he breach any provision of this agreement, the U.S.
Attorney will have the right to use against Defendant before any
grand jury, at any trial or hearing, or for sentencing purposes,
any statements which may be made by him, and any information,
materials, documents, or objects which may be provided by him to
the government subsequent to this Agreement, without any
limitation.  In this regard, Defendant hereby waives any defense
to any charges which he might otherwise have under any statute of

7

limitations or the Speedy Trial Act.

        13.  Who Is Bound By Agreement

    This Agreement is limited to the U.S. Attorney for the
District of Massachusetts, and cannot and does not bind the
Attorney General of the United States or any other federal,
state, or local prosecutive authorities.

        14.  Complete Agreement

    This letter contains the complete and only agreement between
the parties relating to the disposition of this case.  No
promises, representations, or agreements have been made other
than those set forth in this letter.  This Agreement supersedes
prior understandings, if any, of the parties, whether written or
oral.  This Agreement can be modified or supplemented only in a
written memorandum signed by the parties or on the record in
court.

    If this letter accurately reflects the Agreement between the
U.S. Attorney and Defendant, please have Defendant sign the
Acknowledgment of Agreement below.  Please also sign below as
Witness.  Return the original of this letter to Assistant U.S.
Attorney Ernest DiNisco.


                        Very truly yours,

                        MICHAEL J. SULLIVAN
                        United States Attorney

                    By: _James B. Farmer_____
                        JAMES B. FARMER
                 Acting Section Chief
                        Criminal Chief
                        Assistant U.S. Attorney
                        ERNEST DINISCO
                        Assistant U.S. Attorney


                            8

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.  I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter.  I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses, and Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case.  We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement, and whether I should go to trial.  I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

_____
Vincent Gioacchini
Defendant

Date:_____

I certify that Vincent Gioacchini has read this Agreement and that we have discussed its meaning.  I believe he understands the Agreement and is entering into the Agreement freely, voluntarily, and knowingly.

_____
Robert A. George, Esq.
Attorney for Defendant

Date:_____

9

### ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.  I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter.  I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses, and Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case.  We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement, and whether I should go to trial.  I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

*Vincent Gioacchini*
Vincent Gioacchini
Defendant

Date: *1-27/05*

I certify that Vincent Gioacchini has read this Agreement and that we have discussed its meaning.  I believe he understands the Agreement and is entering into the Agreement freely, voluntarily, and knowingly.

*Robert A. George*
Robert A. George, Esq.
Attorney for Defendant

Date: *1/27/05*

9